UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL ANN MERILLAT,

    Debtor,
_____/

CHERYL ANN MERILLAT,

    Appellant,

v.

TIMOTHY J. MILLER,

    Appellee.
_____/

Civil Action No. 14-10896
Honorable Patrick J. Duggan

Bankruptcy No. 13-54410
Honorable Marci B. McIvor

**OPINION AND ORDER**
**(1) AFFIRMING IN PART AND REVERSING IN PART THE BANKRUPTCY COURT'S ORDER GRANTING TRUSTEE'S OBJECTIONS TO DEBTOR'S SECOND AMENDED EXEMPTIONS,**
**(2) REMANDING THE CASE TO THE BANKRUPTCY COURT FOR FURTHER PROCEEDINGS,**
**(3) LIFTING THE STAY ENTERED ON APRIL 24, 2014,**
**and**
**(4) DENYING AS MOOT APPELLANT'S MOTION FOR STAY PENDING APPEAL**

**I. INTRODUCTION**

    This is a bankruptcy appeal. Appellant Cheryl Ann Merillat, the debtor, appeals an order of the Bankruptcy Court for the Eastern District of Michigan disallowing her from claiming three exemptions under 11 U.S.C. § 522(d), which enumerates specific property that is exempt from inclusion in the bankruptcy estate and thus unreachable by creditors. Appellee Timothy J. Miller, the bankruptcy trustee, claims that the Bankruptcy Court properly denied the exemptions at issue.

This matter is fully briefed. Upon review of the record and briefs on appeal, the Court concludes that oral argument would not aid the decisional process. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, the Court will affirm in part and reverse in part the Bankruptcy Court's order sustaining Appellee's objections of the exemptions claimed by Appellant, and remand the case for further proceedings consistent with this opinion. In addition, the Court will lift the temporary stay imposed on April 24, 2014, and deny as moot Appellant's motion for stay pending appeal.

## II. BACKGROUND

Appellant Cheryl Ann Merillat, the debtor in this matter, married Bryan Merillat in February 1996. The year before their marriage, the couple was involved in a serious motorcycle accident. Appellant, the passenger, sustained more serious injuries than did Mr. Merillat, who was driving above the posted speed limit. Since the accident, Appellant has had more than twenty-five major surgeries and has been unable to return to work as a tenured third-grade teacher. Due to these circumstances, the State of Michigan granted Appellant a disability pension.

Following the accident, the couple married, at which time Mr. Merillat promised to take care of Appellant for the rest of her life. During their sixteen-year marriage, the couple had one child.

The couple divorced pursuant to a judgment of divorce issued by a Michigan state court on January 22, 2013. The judgment awards physical custody of the child, who was nine years old at the time of the divorce, to Appellant. Dkt. 1 Page ID 191. The "spousal support" section of the judgment reflects that "[n]either party is entitled to spousal support" and that spousal support is "forever barred." *Id.* at Page ID 193. In addition, under the "property settlement"

section of the judgment, the marital home, located at 866 Pinecrest Drive, Dexter, Michigan 48130, was awarded to "[b]oth parties," but Appellant was awarded "exclusive use of [the] property . . ." *Id.* at Page ID 195. Also under the "property settlement" section of the judgment, in a subsection entitled "IRA's/Pensions/Stock Options/Investment accounts," Appellant was awarded a sum of $99,158.31 to be taken from various retirement accounts held by Mr. Merillat, including a 401(k) account at AXA Equitable. The judgment states that the $99,158.31 award was made to "equalize the parties' IRAs." *Id.* at Page ID 196. In addition, under the same subsection of the judgment, Mr. Merillat was ordered to pay Appellant "an additional $50,000.00 as a property settlement payment." *Id.* Thus, the judgment requires Mr. Merillat to pay Appellant a total of $149,158.31 from his various retirement accounts. *Id.*

Two qualified domestic relations orders (QDROs) were entered by the state court to facilitate the transfer of the above-described retirement funds from Mr. Merillat to Appellant. Pursuant to the first QDRO, an account at AXA Equitable was established for Appellant on June 21, 2013, and which time $87,931.24 was transferred from Mr. Merillat's AXA Equitable account to Appellant's account. *Id.* at Page ID 204.

Approximately one month later, on July 22, 2013, Appellant liquidated the AXA Equitable account, which, at the time, had a balance of $88,057.08. A statement entitled "AXA Equitable 401(k) Plan Confirmation of Payment," dated July 22, 2013, provides the details surrounding the liquidation of the account. The opening paragraph of the statement reflects that the purpose of the statement is to "describe[] how your July 22, 2013 distribution from the AXA Equitable 401(k) Plan was paid and provide[] you with the information you need to calculate the taxes you may owe for the 2013 tax year." *Id.* at Page ID 212. At Appellant's direction, $22,000 of the $88,057.08 gross payment amount was rolled over into an IRA at Wells Fargo Bank. *Id.*

at Page ID 212-213. After federal and state taxes were withheld, Appellant was left with a net cash payment of $50,227.96. *Id.* at 212. The statement indicates that a check would be mailed to Appellant within two days of the July 22 distribution date. *Id.* An earnings statement dated July 24, 2013 was sent to Appellant confirming that federal and state taxes had been withheld from the Appellant's gross payment amount. *Id.* at Page ID 217. Appellant kept the $50,227.96 check for several months and eventually deposited it into a demand deposit account at TCF Bank on September 23, 2013.

Again, the judgment of divorce ordered Mr. Merillat to pay Appellant a total sum of $149,158.31 from his various retirement accounts. The first QDRO provided for the payment of $87,931.24, leaving a remaining balance owed to Appellant of $61,227.07. A second QDRO was issued assigning to Appellant $61,227.07 in funds held in Mr. Merillat's AXA Equitable pension plan. The details regarding Appellant's recovery of this money, although outlined by the parties in their briefs, are not relevant for the present purposes.

On July 28, 2013, Appellant filed a voluntary bankruptcy petition under Chapter 7. On December 17, 2013, Appellant filed a second amended Schedule C listing several items of property that she claims are exempt from the bankruptcy estate pursuant to 11 U.S.C. § 522(d). Only two items of property are relevant for the present purposes. First, Appellant claimed that the marital home, located at 866 Pinecrest Drive, constitutes property that is exempt from the bankruptcy estate under either § 522(d)(10)(D), which exempts "[t]he debtor's right to receive . . . alimony, support, or separate maintenance," or § 522(d)(11)(E), which exempts "a payment in compensation of loss of future earnings of the debtor." Second, Appellant claimed that her net cash payment of $50,227.96 – money that originated in Mr. Merillat's AXA Equitable 401(k) account and was distributed via check to Appellant on July 22, 2013 – is exempt from the estate

4

under either § 522(d)(12), which exempts "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation," or the "future earnings" exemption of § 522(d)(11)(E), quoted above.

Appellee objected to these claimed exemptions. On January 21, 2014, the Bankruptcy Court held a hearing and, from the bench, sustained each of the objections. An order followed the next day. The Bankruptcy Court's reasons for sustaining each objection are described in greater detail below.

On January 26, 2014, Appellant filed a notice of appeal.

### III. STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error; its conclusions of law are reviewed *de novo*. *In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir. 2008).

### IV. ANALYSIS

"When a debtor files a bankruptcy petition, all of his property becomes property of the bankruptcy estate." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S. Ct. 1644, 1647 (1992). However, the Bankruptcy Code "allows a debtor to prevent the distribution of certain property by claiming it as exempt." *Id.*; *see also Owen v. Owen*, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."). Under 11 U.S.C. § 522(l), a debtor must file with the bankruptcy court a list of property that he or she wishes to exempt from the bankruptcy estate. Section 522(d) "lists 12 categories of property that a debtor may claim as exempt." *Schwab v. Reilly*, 560 U.S. 770, 782, 130 S. Ct. 2652, 2661 (2010).

The party objecting to an exemption – Appellee here – has the burden of proving that the property claimed by the debtor should not be exempted, *see* Fed. R. Bankr. P. 4003(c), and

5

"[e]xemptions should be liberally construed in favor of the debtor." *In re Brown*, 391 B.R. 210, at *5 (Table) (6th Cir. BAP 2008).

Appellant claims that the marital home is exempt from the bankruptcy estate as either a right to receive alimony, support, and separate maintenance, *see* § 522(d)(10)(D), or as a payment in compensation of loss the loss of future earnings. *See* § 522(d)(11)(E). Appellant also claims that her $50,227.96 net cash payment from Mr. Merillat's AXA Equitable 401(k) retirement account is exempt as either retirement funds in a tax exempt account, *see* § 522(d)(12), or as a payment in compensation of loss the loss of future earnings. *See* § 522(d)(11)(E).

### A. Exemption for the Marital Home Under 11 U.S.C. § 522(d)(10)(D)

The Bankruptcy Court disallowed Appellant from claiming an exemption for her interest in the real property located at 866 Pinecrest Drive, Dexter, Michigan 48130 under 11 U.S.C. § 522(d)(10)(D), which provides an exemption for "[t]he debtor's right to receive . . . alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." As mentioned, under the "property settlement" section of the divorce judgment, Appellant was awarded a one-half ownership interest in the property along with "exclusive use" of the property.

In denying the exemption, the Bankruptcy Court noted from the bench that exemptions under § 522(d)(10)(D) typically take the form of a payment of money to the debtor and that there is no case law supporting Appellant's attempt to claim an exemption for her interest in real property:

> This Court notes at the outset that every case discussing [§] 522(d)(10)(D) is factually distinguishable from the instant case. In the instant case, debtor is not trying to exempt payment of money under 11 U.S.C., Section 522(d)(10)(D). She's attempting to exempt her interest in the marital home. In this Court's view,

6

> there is no case law which supports debtor's attempt to exempt her interest in the marital home under 11 U.S.C., Section 522(d)(10)(D).

Dkt. 1 at Pg. ID 124. In so holding, the Bankruptcy Court held that an award of real property cannot, as a matter of law, constitute alimony, support, or separate maintenance for purposes of § 522(d)(10)(D):

> By definition, the division of real property by way of a judgment of divorce is a property settlement. Real property awarded pursuant to a property settlement is not an asset which can be construed as alimony and exempted under 11 U.S.C., Section 522(d)(10)(E) [sic].[1] In the instant case, the judgment of divorce awarded the Pinecrest property to debtor and Mr. Merillat as joint tenants. While the judgment of divorce did award debtor the use of the jointly owned property, the right to use real property is not an interest which may be exempted under any section of 11 U.S.C., Section 522(d).

*Id.* at Page ID 124-125.

The Bankruptcy Court's apparent view that alimony, support, and separate maintenance, for purposes of § 522(d)(10)(D), must take the form of a money payment and cannot take the form of an interest in real property is erroneous. The case law reflects that alimony, support, or separate maintenance under the Bankruptcy Code can take other forms – not just the form of a monetary payment – and that a fact-intensive inquiry is required to determine whether the parties intended to provide alimony, support, or separate maintenance.

For example, the bankruptcy court in *In re Pylant*, 467 B.R. 246 (M.D. Ga. 2012), a case on which Appellant relies, concluded that the debtor's obligation under a divorce settlement agreement to provide his former spouse with a house in which to live constituted alimony for purposes of 11 U.S.C. §§ 101(14A), 523(a)(5) and 1328(a)(2), which together provide that alimony, maintenance, and support are "domestic support obligations" and thus non-dischargeable in bankruptcy. In so holding, the court, quoting the Eleventh Circuit, reiterated

---

[1] The Court assumes that the Bankruptcy Court meant to reference § 522(d)(10)(D) and not § 522(d)(10)(E), as the latter provision does not involve alimony and was not the subject of the Court's discussion.

that, in determining whether an obligation constitutes alimony or support, "'a court cannot rely solely on the label used by the parties [in the divorce decree],'" but instead "'must . . . look beyond the label to examine whether the debt actually is in the nature of support or alimony.'" *Pylant*, 467 B.R. at 251 (quoting *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)). Focusing on the intent of the parties, the court attempted to discern whether the parties intended for the debtor's obligation to provide his ex-spouse with a house in which to live to constitute alimony or support by considering the following factors, among others: (a) testimony from the parties and their respective divorce attorneys, (b) the relative financial position of the parties, (c) the language used in the divorce settlement agreement, (d) whether the parties treated the obligation as alimony and support for tax purposes, (e) the number and frequency of payments, and (f) whether the divorce settlement agreement provided for alimony/support elsewhere in the agreement. Only after holding a trial and engaging in a detailed factual analysis of the unique circumstances of the case did the court conclude that "the parties intended [the debtor's] obligation to provide [his ex-spouse] with a replacement home to function as support." 467 B.R. at 255.

Similarly, in *In re Calhoun*, 715 F.2d 1103 (6th Cir. 1983), another case on which Appellant relies, the Sixth Circuit considered whether the debtor's assumption of five marital debts pursuant to a separation agreement constituted alimony, maintenance, or support for purposes of dischargeability. The bankruptcy court, relying on the fact that the separation agreement characterized the obligation as alimony and support, held that the obligation constituted alimony or support and was thus non-dischargeable. The Sixth Circuit reversed, holding that "[t]he language of the parties' (or state courts') characterization of the loan assumption does not control" and that, in resolving the issue, "the initial inquiry must be to

8

ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts." 715 F.2d at 1111 (emphasis in original).

Another instructive case is *In re Harbaugh*, 257 B.R. 485 (E.D. Mich. 2001), a case on which both parties rely. The debtor there attempted to claim an exemption under § 522(d)(10)(D) for her right under the "alimony and spousal support" section of her divorce decree to receive $48,500 from her ex-husband over a period of time. Although the obligation was found in the "alimony and spousal support" section of her divorce decree, the *Harbaugh* court did not rely solely on that label and instead engaged in a detailed analysis of the intent of the parties, ultimately affirming the bankruptcy court's conclusion, reached after conducting an evidentiary hearing, that the parties intended the obligation to constitute alimony and support:

> By focusing on the questions of whether divorcing parties have intended purported alimony to be used for basic sustenance and if the amount is reasonably necessary to achieve that purpose, the Court can bypass the formal issue of nomenclature, look to the substance of the obligation, and, in the meantime, uphold Congress' intent.

257 B.R. at 491. Although one of several factors considered by the court was the fact that the parties and the state court characterized the obligation in the divorce decree as "alimony and spousal support," the court considered numerous other factors – including some of the factors considered by the *Pylant* court – in reaching its ultimate conclusion. *See id.* at 492.

As the cases discussed above illustrate, the Bankruptcy Court here did not engage in the appropriate analysis in determining whether Appellant's interest in the Pinecrest property constitutes alimony, support, or separate maintenance for purposes of § 522(d)(10)(D). Instead of considering evidence probative of the intent of the parties, the Bankruptcy Court erroneously concluded as a matter of law that an interest in real property cannot constitute alimony, support,

9

or separate maintenance under the Bankruptcy Code. However, *Pylant* and *Calhoun* – two cases involving obligations that were not in the form of direct money payments – counsel otherwise. And although Appellee argues that the intent of the parties is apparent from the fact that the property interest was awarded to Appellant in the "property settlement" section of the judgment of divorce, *Calhoun* and *Harbaugh* illustrate that the label alone is not controlling and that a fact-intensive analysis of other factors relating to the intent of the parties is necessary.

Accordingly, the Court must reverse the Bankruptcy Court's decision sustaining Appellee's objection to Appellant's claim of exemption for the Pinecrest property under § 522(d)(10)(D), and remand the case for further proceedings. On remand, the Bankruptcy Court should conduct appropriate proceedings focused on discerning the intent of the parties. If the Bankruptcy Court concludes that the parties intended for Appellant's interest in the Pinecrest property to constitute alimony, support, or separate maintenance, it must then consider the extent to which the property interest is "reasonably necessary for the support of" Appellant and her daughter. *See* 11 U.S.C. § 522(d)(10)(D).

### B. Exemption Under 11 U.S.C. § 522(d)(12) for $50,227.96 Originating in Mr. Merillat's 401(k) Retirement Account

The next issue is whether the Bankruptcy Court properly disallowed Appellant from claiming an exemption in the amount of $50,227.96, comprising funds that were held in a retirement account that was qualified under § 401(a) of the Internal Revenue Code. Appellant claimed this exemption pursuant to 11 U.S.C. § 522(d)(12), which permits a debtor to exempt from the bankruptcy estate "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." Thus, for funds to be exempt under § 522(d)(12), two requirements must be satisfied: (1) the amount must be retirement funds; and (2) the retirement

funds must be in an account that is exempt from taxation under one of the listed sections of the Internal Revenue Code. *See In re Rice*, 478 B.R. 275, 280 (E.D. Mich. 2012). Appellant's entitlement to the exemption is determined as of the filing of the bankruptcy petition – July 28, 2013 in the present case. *See White v. Stump*, 266 U.S. 310, 313, 45 S. Ct. 103, 104 (1924).

On July 22, 2013, a few days before Appellant filed her bankruptcy petition, AXA Equitable distributed to Appellant via check the funds at issue, totaling a net cash payment of $50,227,96. Appellant's net payment was calculated as follows:

| | |
|---|---|
| Gross Cash Payment | $88,057.08 |
| Less Direct Rollover | $22,000.00– |
| Less Federal Withholding | $13,190.93– |
| Less Michigan Withholding | $2,638.19– |
| Net Cash Payment | $50,227.96 |

The paperwork from AXA Equitable reflects that the funds were distributed to Appellant on July 22, 2013 – six days before she filed her bankruptcy petition. The record further reflects that Appellant held the check until September 23, 2013, at which time she deposited it into a demand account held by Appellant at TCF Bank.

Relying mainly on *In re Kane*, No. 99-02153, 1999 WL 33490225 (Bankr. D. Idaho Nov. 24, 1999), Appellee argues that the funds at issue lost their status as exempt retirement funds pursuant to § 522(d)(12) on the day the funds were distributed (July 22, 2013). Appellant argues, relying on *Barnhill v. Johnson*, 503 U.S. 393, 112 S. Ct. 1386 (1992) and *In re Meadows*, 396 B.R. 485 (6th Cir. BAP 2008), that the status was lost on the day she cashed the check (September 23, 2013). If Appellee is right that the funds lost their status as exempt retirement funds on the July 22 distribution date, Appellant cannot claim an exemption under § 522(d)(12) because the distribution preceded the bankruptcy filing. However, if Appellant is right that the funds maintained their tax exempt status as retirement funds until the check was cashed, the

claimed exemption is proper, as Appellant did not cash the check until after the she filed for bankruptcy. *See White*, 266 U.S. at 313, 45 S. Ct. at 104 (entitlement to exemption determined at time of bankruptcy filing).

The Bankruptcy Court adopted Appellee's position and denied the exemption, reasoning that the funds were distributed from the retirement account, taxed, and in the form of a check payable to Appellant prior to the filing of her bankruptcy petition, and were thus neither retirement funds nor funds held in a tax exempt account on that date:

> [T]he two requirements for exempting funds under 11 U.S.C., Section 522(d)(12), are that they be exempt from taxation and that the funds be in an account exempt from taxation on the date of the filing of the petition. The check received by debtor from AXA was not exempt from taxation. The funds distributed to debtor had already been taxed prior to distribution. And the funds were not in a tax-exempt account on the date debtor filed her petition. On the date debtor received the funds, she could do what she pleased with the funds.

Dkt. 1 at Page ID 133. The Bankruptcy Court relied on a number of cases in support of its decision, one of which was *Kane*, the principle case on which Appellee relies.

The facts of *Kane* are similar to the facts of the present case. The debtor in *Kane* liquidated and withdrew the proceeds of his tax-exempt retirement account just before filing his bankruptcy petition. He claimed, over the trustee's objection, that the proceeds were exempt from the bankruptcy estate under an Idaho exemption statute similar to § 522(d)(12). The court held that the funds at issue lost their status as exempt retirement funds when the account was liquidated and a check to the debtor was issued: "It is sufficient, for purposes of this decision, to find that [the brokerage firm] must have necessarily liquidated the account and issued the check prior to [the bankruptcy filing]." 1999 WL 33490225, at *4

In the present case, the paperwork from AXA Equitable reflects that the funds that are the subject of Appellant's claimed exemption were distributed on July 22, 2013, several days before

12

Appellant filed for bankruptcy. *See* Dkt. 1 Page ID 212 ("This statement describes how your July 22, 2013 distribution from the AXA Equitable 401(k) plan was paid and provides you with the information you need to calculate the taxes you may owe . . ."). Further, the paperwork from AXA Equitable, under the "Transaction Detail" section, reflects that, on the July 22 distribution date, AXA Equitable liquidated funds totaling $88,057.08 – the amount of Appellant's gross cash payment – from the tax-exempt fund ("Fixed Income Fund") in which the money was held. *See id.* at Page ID 214. Finally, on the same date, the evidence indicates that AXA Equitable deducted federal and state taxes from Appellant's gross cash payment, and AXA Equitable sent Appellant an earnings statement on July 24, 2013 confirming that federal and state taxes were withheld. *See id.* at Page ID 212, 216. The very fact that tax was withheld on the proceeds at the time of distribution necessarily means that the proceeds were not in a tax-exempt fund. Because the funds that Appellant attempts to exempt under § 522(d)(12) were no longer "in" one of the tax-exempt retirement funds listed in the statute when she filed for bankruptcy, *see* 11 U.S.C. § 522(d)(12), Appellant is not entitled to claim the exemption.[2]

Appellant argued before the Bankruptcy Court – and continues to argue before this Court – that *Barnhill* and *Meadows* support her argument that she is entitled to an exemption in the amount of $50,227.96 under § 522(d)(12) for the proceeds of the retirement fund at issue. The Bankruptcy Court rejected the argument, holding that Appellant's reliance on *Barnhill* and *Meadows* is misplaced. From the bench, the Bankruptcy Court stated:

> [*Barnhill* and *Meadows*] do not support debtor's argument. *Barnhill v. Johnson* addresses at what point in time a check becomes property of the party to whom the check is issued for purposes of a preference recovery under 11 U.S.C., Section

---

[2] Appellant attempts to distinguish *Kane*, asserting that the result in that case was "more based upon the bad faith of the Debtors." Reply at 6 (Dkt. 8). While *Kane* did involve the failure of the debtors to disclose in their initial bankruptcy papers their interest the retirement account in question, the decision is devoid of any suggestion that the concealment impacted the court's determination.

13

>547(e). The Supreme Court concluded that for purposes of a preference recovery, the 90-day preference recovery period started to run on the date the creditor negotiated the check. In *Meadows* the issue was whether a creditor's presentment of a check post-petition violated the automatic stay under 11 U.S.C., Section 362. Neither case cited by debtor addresses the issue of whether retirement funds that have been liquidated and paid out to a beneficiary by way of a check remain retirement funds for purposes of 11 U.S.C., Section 522(d)(12). As noted above, the two requirements for exempting funds under 11 U.S.C., Section 522(d)(12), are that they be exempt from taxation and that the funds be in an account exempt from taxation on the date of the filing of the petition. The check received by debtor from AXA was not exempt from taxation. The funds distributed to debtor had already been taxed prior to distribution. And the funds were not in a tax-exempt account on the date debtor filed her petition. On the date debtor received the funds, she could do what she pleased with the funds.

Dkt. 1 at Page ID 132-133.

Having reviewed *Barnhill* and *Meadows*, the Court agrees with the Bankruptcy Court's conclusion. In *Barnhill*, the Supreme Court interpreted the definition of the word "transfer," for purposes of the preference avoidance statute, 11 U.S.C. § 547, under which the trustee is permitted to recover a "transfer" of property made by the debtor within ninety days before the date on which the bankruptcy petition is filed. More specifically, the Court was tasked with determining whether a "transfer" made by check was deemed to occur on the date the check was honored (*i.e.*, cashed) rather than the date on which the payee received the check. The Court resolved the issue by examining the language of the statutory provisions defining the word "transfer" for purposes of § 547, concluding that a transfer occurs for purposes of § 547 when the recipient has a right to receive the thing transferred.

The statute at issue in the present case – § 522(d)(12) – does not use the word "transfer" to define the status of retirement funds as either exempt or not exempt. Rather, the outcome here depends on the interpretation of different statutory language, namely, whether the interest claimed as an exemption was "in a fund or account that is exempt from taxation" at the time of the bankruptcy filing. As discussed above, the evidence reflects that the funds at issue left the

14

tax exempt fund as of the distribution date, which was before the bankruptcy filing. While the money may not have been "transferred" on that date, the relevant inquiry here, unlike in *Barnhill*, is not tied to the occurrence of a transfer.[3]

### C. Exemption Under 11 U.S.C. § 522(d)(11)(E) for the Marital Home and for $50,227.96 Originating in Mr. Merillat's 401(k) Retirement Account

Appellant claimed an exemption under § 522(d)(11)(E) for her interest in the marital home and for her net cash payment of $50,227.96, which originated in Mr. Merillat's 401(k) retirement account at AXA Equitable. Section 522(d)(11)(E) provides an exemption for "[t]he debtor's right to receive, or property that is traceable to . . . a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Appellant argues that the house and the retirement funds are exempt under this provision on the theory that both interests are payments by Mr. Merillat to compensate Appellant for what he took away from her as a result of the motorcycle accident that occurred before the marriage – her ability to work as a teacher. According to Appellant:

> As a result of the accident which occurred prior to the Merillats' marriage, Mrs. Merillat became permanently disabled and is unable to work anywhere, including in her chosen career. Mrs. Merillat was a homeowner and a single mother prior to the accident, she had earned tenure with her school district and by now she would have been entitled to a substantial salary and excellent benefits. All of these were taken away by Mr. Merillat in the accident. Mr. Merillat tried to compensate the Debtor for her loss by marrying her to take care of her, but his filing for divorce constituted an abdication of his responsibility. The usage of the house and the

---

[3] Appellant also relies on *Meadows*; however, her reliance on that case is unavailing for the same reason as is her reliance on *Barnhill* – both cases, unlike the present case, involve a statute that uses the word "transfer." *Meadows* held that a creditor's post-petition presentment of a pre-petition check did not violate the automatic stay, but rather effects a transfer of property of the estate, which is subject to avoidance as a post-petition "transfer" under 11 U.S.C. § 549(a) (authorizing trustee to avoid a post-petition "transfer of property of the estate."). The *Meadows* court followed *Barnhill*'s definition of the word "transfer," holding that a transfer occurred and that is was subject to avoidance under § 549(a).

15

> pension proceeds are merely enabling the Debtor to survive and support her dependent child given the loss of Mr. Merillat's support and Mr. Merillat's destruction of the Debtor's career.

Dkt. 4 at Page ID 266.

The Bankruptcy Court rejected Appellant's argument, explaining from the bench:

> Generally, 11 U.S.C., Section 522(d)(11)(E), applies to tort recoveries, although certain other types of lump sum payments may be exempt under 11 U.S.C., Section 522(d)(11)(E). These funds must be traceable to an award of compensation made to compensate an injured party for a loss of future earnings.
>
> * * * *
>
> Debtor fails to explain how [the interests are] a payment in compensation of loss of future earnings of the debtor. [The interests were] owed to debtor as a result of a judgment of divorce. [They are] not owed to debtor as a result of a judgment in which debtor was awarded damages as a result of injuries which interfered with her ability to earn a living. Debtor seems to suggest that because she and Mr. Merillat were in a motorcycle accident in 1995, everything awarded in the 2013 judgment of divorce may be characterized as compensation for loss of future earnings. The case law does not support such a theory.

Dkt. 1 at Page ID 128-129 (case citations omitted). This Court agrees with the Bankruptcy Court.

Appellant's attempt to exempt her interest in the marital home and the retirement account money under § 522(d)(11)(E) is improper. All of the cases discussing exemptions taken under § 522(d)(11)(E) involve discrete, sum certain payments to compensate for the debtor's loss of future earnings that are made pursuant to some agreement, award, or judgment. *See, e.g.*, *In re Lewis*, 387 F. App'x 530 (6th Cir. 2010) (buyout payments received by debtor from former employer in exchange for waiving right to future earnings exempt under § 522(d)(11)(E)); *In re Holstine*, 458 B.R. 392 (Bankr. E.D. Mich. 2011), aff'd, No. 11-14573, 2012 WL 2891220 (E.D. Mich. July 15, 2012) (funds traceable to a lump sum worker's compensation redemption award exempt under § 522(d)(11)(E)); *In re Lebourdais*, No. 13-50222, 2014 WL 1165803 (Bankr.

E.D. Mich. Mar. 19, 2014) (same). Appellant cites no case, and the Court is aware of none, suggesting that an exemption can be taken under § 522(d)(11)(E) for interests that stem from a generalized, non-specific, undocumented promise to "take care" of someone for life. Appellant argues that the Bankruptcy Court erred in holding that § 522(d)(11)(E) applies only to compensation received in the nature of tort liability; however, Appellant mischaracterizes the Bankruptcy Court's holding. The Bankruptcy Court merely noted that § 522(d)(11)(E) "generally" applies to tort recoveries, but expressly acknowledged that other types of payments may also be covered. The Court discerns no error in the Bankruptcy Court's analysis or conclusion.

## V. CONCLUSION

For the reasons stated above, the Court reverses the Bankruptcy Court's holding that the marital house is not exempt under 11 U.S.C. § 522(d)(10)(D), and remands the case for further proceedings that are consistent with this opinion. The Court affirms the Bankruptcy Court's holdings that (1) the retirement funds are not exempt under 11 U.S.C. § 522(d)(12), and (2) neither the marital house nor the retirement funds are exempt under 11 U.S.C. § 522(d)(11)(E). In addition, the temporary stay imposed by the Court on April 24, 2014 is lifted, and Appellant's motion to stay the sale of the marital home pending the disposition of this appeal is denied as moot.

**SO ORDERED.**

Dated: May 8, 2014                             s/PATRICK J. DUGGAN
                                               UNITED STATES DISTRICT JUDGE

17